Tips Foundry & Machine Company et al. v. State of Texas et al.

Decided June 12, 1907.

**1.—Contract—Lease—Cancellation—Authority to Act for State.**

A lease of public ground made by the State through its superintendent of buildings and grounds acting by authority of a joint resolution of the Legislature provided that the State acting through said superintendent reserved the

right to cancel the contract at the expiration of five years. Held that the contract authorized the superintendent to effect such cancellation on behalf of the State.

**2.—Same—Estoppel.**

The tenant of property of the State holding under a lease for eight years executed by its superintendent of buildings and grounds which authorized him to cancel same after five years, could not question his right to act for the State in making such cancellation on the ground that the reservation of such authority in the officer was not authorized by the joint resolution empowering him to make the lease with reservation of such power to the State.

Appeal from the District Court of Travis County. Tried below before Hon. George Calhoun.

*Cochran & Penn,* for appellants.—The superintendent of public buildings and grounds had no authority under the law to exercise the option reserved to the State to cancel, at the expiration of five years, the lease to the Backman Foundry & Machine Company, dated September 11, 1901, and his attempted cancellation thereof did not in any wise affect or impair the rights of the defendant under said lease.

*Allen & Hart,* for W. B. Walker & Sons, and

*R. V. Davidson,* Attorney General, and *Wm. E. Hawkins,* Assistant, for State.

In the construction of a statute, the court will look to the intent of the Legislature and give effect thereto, if possible, in preference to giving the statute a literal construction inconsistent with the plain purpose of the Legislature. Mills County v. Lampasas County, 90 Texas, 606; Barron v. Wofford, 90 Texas, 517.

By accepting a lease from the State, made by the agent of the State (the superintendent of public buildings and grounds), which showed the construction placed on the joint resolution by such agent, the appellants were given full notice of the construction to be placed on the joint resolution under which such lease was executed, and are now estopped from setting up any other construction. If the language of the joint resolution authorizing a cancellation should be held to be ambiguous or of doubtful meaning, that construction which the lessees and the State through its aforesaid agent placed thereon should prevail. Acts of the First Called Session of the Twenty-Seventh Legislature, Joint Resolution authorizing lease of property, p. 47; Galveston H. & S. A. Ry. Co. v. State, 81 Texas, 602; Nevell v. Terrell, 99 Texas, 355.

KEY, ASSOCIATE JUSTICE.—The State of Texas and W. B., W. D., J. C. and T. B. Walker, partners, doing business under the firm name of W. B. Walker & Sons, brought this suit in the form of trespass to try title against the Tips Foundry & Machine Company and Isaac Bledsoe, seeking to recover part of a block of land in the City of Austin, known as the Old Court House Block.

The defendants answered by general and special exceptions, general denial and plea of not guilty; and the Tips Foundry & Machine

Company pleaded over against the Walkers, and prayed for judgment against them for a certain portion of the premises in controversy and for damages.

Trial was had before the court without a jury, and judgment rendered for the plaintiffs against the defendants for the premises in controversy, and against the Tips Foundry & Machine Company on its cross-action against the. Walkers, and the defendants have appealed.

The property in controversy belongs to the State and the question to be decided is whether or not the Superintendent of Public Buildings and Grounds had the power to cancel and terminate a lease contract entered into with the Backman Foundry & Machine Company, a corporation whose name has since been changed to the Tips Foundry & Machine Company. That contract was made September 11, 1901, and purported to lease the property to the defendant corporation for a term of eight years. In the contract the Superintendent of Public Buildings and Grounds is described as the party of the second part; and it is stipulated therein that if the installments of rent are not paid when due the lease may be canceled "at the option of the party of the second part." It also contains this further provision: "It is further understood and agreed that the State acting through the party of the second part, shall have and reserve the right to cancel this contract at the expiration of five years." Acting under that clause of the contract the Superintendent of Public Buildings and Grounds took the necessary steps to terminate and cancel that contract at the expiration of five years, and made another contract leasing the property to the firm of W. B. Walker & Sons. On November 1, 1902, the Backman Foundry & Machine Company leased to the T. B. Walker Manufacturing Co., a firm composed of persons who were members of the firm of W. B. Walker & Sons, a portion of the property in controversy for a term ending June 20, 1909. That lease contract was in writing, and authorized the lessor to cancel the lease upon failure to pay any installment of rent, which was done on account of the failure to pay rent under that contract after the Walkers had leased from the State, acting through the Superintendent of Public Buildings and Grounds.

The authority of the Superintendent of Public Buildings and Grounds to lease the premises was derived from Concurrent Resolution No. 3, passed by the 27th Legislature and approved September 6, 1901, whereby he was empowered and directed to lease the property in controversy "to such party or parties and for such price as may be deemed best by him and for the best interests of the State not less than two hundred dollars per year for a term not extending beyond the 20th day of June, 1909; that said contract shall provide for quarterly payments in advance of the amount agreed upon, and that said Superintendent of Public Buildings and Grounds shall have the power and authority to forfeit and cancel such lease upon the failure to pay the rent so agreed, provided the State reserves the right to cancel the contract at the expiration of five years."

It is urged on behalf of appellants (1) that the lease contract under which they hold does not purport to confer upon the Superintendent of Public Buildings and Grounds authority to terminate the lease at the expiration of five years; and (2) if it does so purport, then in that particular it is inoperative, for the reason that the Superintendent had no authority to make such a stipulation.

The first point requires a consideration of that part of the contract quoted above which provides for its cancellation at the expiration of five years. Manifestly it was the intention of that provision to secure and reserve to the State the right· to cancel the contract at the end of five years; and we think it was also the intention of the parties to the contract to designate the agent or officer by which the cancellation could be effected, and that designation was made by inserting immediately after the word "State," the phrase "acting through the party of the second part." Unless that language was placed there for that purpose we see no reason for its use in that connection. It was not necessary for the purpose of showing that in making the contract the Superintendent of Public Buildings and Grounds was acting for the State, because that had already been stated in the first paragraph of the instrument. Hence we conclude that, by the terms of the contract, the Superintendent was authorized to cancel it at the expiration of five years.

As to the second point, we are of the opinion that the lessee, and those claiming under that lease, can not question the power of the Superintendent of Public Buildings and Grounds to make the contract. Having signed and accepted the contract containing the stipulation which vested in the Superintendent the power of cancellation, the appellants can not claim protection under that contract and question the validity of any portion of it.

No error has been shown and the judgment is affirmed.

*Affirmed.*

Writ of error refused.